**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**ALONZO GILLIAM, III**                                                                                 **PLAINTIFF**
**ADC #98194**

**V.**                               **No. 2:12CV00091-JMM-BD**

**TONY BARNES,** *et al.*                                                       **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.**     **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody. Mr. Gilliam–or any party–may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections to:

>   Clerk, United States District Court
>   Eastern District of Arkansas
>   600 West Capitol Avenue, Suite A149
>   Little Rock, AR 72201-3325

**II.  Background:**

Plaintiff Alonzo Gilliam, III, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit *pro se* under 42 U.S.C. § 1983, alleging that Defendants Barnes, Brooks, and Butler used excessive force during a cell extraction on the yard of the ADC's East Arkansas Regional Unit. He also alleged that Defendants Lane, Lang, Foreman, Allen, Warren, and Chapman failed to protect him. (#2, #8) In a supplement to his complaint, Mr. Gilliam identified additional defendants who were part of the extraction team and alleged that Defendants Butler, Smith, Hoskin, and Cobb also used excessive force when removing him from his cell. (#71 at p. 2) In addition, Mr. Gilliam alleged that all of the defendants failed to protect him. (#8, #71 at p. 2)

Mr. Gilliam's complaints against Defendant Clayton Brooks were dismissed, without prejudice, for lack of service of process. (#109) Additionally, the Court granted Defendant Stormi Sherman's motion for summary judgment, and all claims against her were dismissed with prejudice. (#232)

The ADC Defendants have now moved for summary judgment (#219), contending that the force used during the extraction was reasonable under the circumstances; that they are entitled to sovereign immunity as to all claims for monetary damages in their

official capacities; and that they are entitled to qualified immunity as to all claims for monetary damages in their individual capacity. (#219)

In response to the ADC Defendants' motion for summary judgment, Mr. Gilliam complains that the force used by the Defendants was not reasonable or necessary to gain compliance, but rather, was imposed maliciously and sadistically to inflict pain and cause harm. (#234 at p. 12) The Defendants did not reply to Mr. Gilliam's response.

For the reasons set forth below, the Court recommends that the ADC Defendants' motion for summary judgment (#219) be granted.[1]

### III. Discussion:

    A.    Summary Judgment Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must respond with specific facts that are genuinely disputed. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042

---

[1] Because the Court has determined that Defendants are entitled to summary judgment on Mr. Gilliam's excessive force claims, it need not address their qualified immunity argument.

(8th Cir. 2011) (en banc). When a plaintiff does not come forward with enough evidence to establish a necessary element of his claim, the moving party is entitled to judgment as a matter of law on that claim. *Celotex Corp.*, 447 U.S. at 322-23, 106 S.Ct. at 2552.

    B.    Undisputed Facts

On the morning of November 25, 2011, Defendant Foreman was assigned to conduct yard-call. He observed Mr. Gilliam trying to remove wire from the fence of his assigned cell in the yard. (#191-1 at p. 1, #219-3 at p. 42) Defendant Foreman gave Mr. Gilliam several direct orders to stop, but he did not comply and stated that if he could get out of the fence he was going to "beat the shit out of" Defendant Foreman. (#219-3 at p. 42) Mr. Gilliam began to kick the fence, enlarging an already existing gap. (*Id*.) Defendant Foreman called for Defendant Brooks. (*Id*.) Defendant Foreman then gave Mr. Gilliam orders to stop kicking the fence, but he did not comply. (*Id*.) Defendant Foreman removed his chemical agent and gave Mr. Gilliam several direct orders to come to the gate to be restrained. (*Id*. at pp. 43-44) Mr. Gilliam refused. (*Id*. at p. 44) Defendant Brooks came to the yard and observed the gap in the fence. Defendant Brooks then went back inside.

The DVD recording[2] of the incident shows that Defendant Foreman was standing at the gap in the fence, and Mr. Gilliam was standing in the middle of his cell with his

---

[2]At his deposition, Mr. Gilliam admitted that the video footage from the time Defendant Brooks came to the yard and asked him to submit to cuffs until the time that officers took him to his cell was an accurate account of the incident. (#219-1 at p. 64)

coat off when Defendant Brooks returned with an extraction team. (#219, Exhibit 3) The extraction team included: Lieutenant Brooks (team leader); Corporal Butler (left arm); Officer Cobb (right leg); Corporal Hoskin (left leg); Sergeant Smith (shield); Officer Warren (right arm); Sergeant Lang (sub-lethal munitions); and Sergeant Lane (camera). (#219-7 at pp. 2-3) Captain Barnes, the shift commander at the time, was also present. And Officer Foreman continued to stand outside the cell near the gap in the fence until the extraction team entered the cell. (*Id.*)

Upon entering the yard,[3] Defendant Brooks walked to Mr. Gilliam's cell door and gave Mr. Gilliam two direct orders to come to the door to be restrained or force would be used. Mr. Gilliam refused to come to the door and covered his head with his coat. (#219, Exhibit 3) Mr. Brooks sprayed two bursts of MK-9 chemical agent into the cell directly toward where Mr. Gilliam was standing. (*Id.*) Defendant Brooks then walked around to the other side of the cell and sprayed two more bursts of MK-9 chemical agent into the cell, then returned to the other side of the cell and sprayed an additional burst of MK-9 into the cell. (*Id.*) Mr. Gilliam continued to stand in the cell with his coat over his head. (*Id.*)

---

[3]At his deposition, Mr. Gilliam agreed that from the point at which Lieutenant Brooks came out to the yard with the extraction team and asked him to come to the gate to be restrained until he was taken to his cell the video was an accurate representation of the events as they occurred. (#219-1 at p. 64)

After waiting a few minutes, Mr. Brooks gave Mr. Gilliam another direct order to come to the gate to be restrained or force would be used. (*Id*.) When Mr. Gilliam did not respond, he gave a final warning and then sprayed two more bursts of MK-9 into the cell. (*Id*.) Mr. Gilliam did not comply and continued to stand in the cell with his coat over his head. (*Id*.)

Mr. Brooks again gave Mr. Gilliam a direct order to step to the door to be handcuffed or the 37 millimeter would be used. Mr. Gilliam did not respond. (*Id*.) Mr. Brooks gave Mr. Gilliam another warning and then gave Defendant Lang the go-ahead to shoot Mr. Gilliam in the right leg with the 37 millimeter. (*Id*.; #219-1 at p. 27) Mr. Gilliam did not move and continued to stand with his coat over his head. (#219, Exhibit 3)

After waiting for Mr. Gilliam to respond, Defendant Brooks ordered Mr. Gilliam to come to the door to be restrained. (*Id*.) Mr. Gilliam did not respond. (*Id*.) Mr. Brooks gave Mr. Gilliam a final warning that force would be used if he did not comply, then ordered Defendant Lang to fire another shot at Mr. Gilliam's left leg. (*Id*.; #219-1 at p. 27) Mr. Gilliam did not respond. (*Id*.)

Defendant Brooks ordered Mr. Gilliam two more times to come to the door to be restrained or the 37 millimeter would be used. (*Id*.) After giving Mr. Gilliam a final warning that force would be used, Defendant Brooks motioned Defendant Lang to shoot Mr. Gilliam in the left side with the 37 millimeter. (*Id*.) Mr. Gilliam did not respond

6

initially, then began to move toward the gate, but then moved away. (*Id.*) Defendant Brooks again gave Mr. Gilliam two orders to step to the gate to be restrained. (*Id.*) In response, Mr. Gilliam threw his coat to the ground and began pacing and chanting "let the force be used." (*Id.*) Mr. Gilliam picked his coat up. (*Id.*) Defendant Brooks again sprayed another bursts of MK-9 into the cell as Mr. Gilliam put the coat over his head. (*Id.*)

Defendant Brooks ordered Mr. Gilliam several more times to come to the door to be restrained and advised Mr. Gilliam repeatedly that if he did not comply, force would be used. (*Id.*) Mr. Gilliam continued to state, "let the force be used." (*Id.*) The extraction team, along with Defendant Barnes, entered the cell. (*Id.*) Mr. Gilliam put his arms up and moved to the side to avoid the shield and resist being restrained. (#219-1 at p. 29) The team and Defendant Barnes used force to take Mr. Gilliam to the ground and place him in restraints.[4] (*Id.*)

After extracting Mr. Gilliam from the yard, the team took him to the shower to decontaminate. (*Id.*) After showering, Mr. Gilliam walked out of the shower cell with no apparent difficulty, walked 20 to 30 feet down a hall where Nurse Stormi Sherman was standing, and knelt down onto his knees so that Ms. Sherman could examine his torso and head. (*Id.*) Ms. Sherman visually examined Mr. Gilliam's face, head, chest, and

---

[4]Approximately one-and-one-half minutes elapsed between the time that the extraction team entered the cell and the time that Mr. Gilliam was placed in restraints.

abdomen. (*Id*.) She touched his right shoulder and head and visually assessed his shoulder, head, and back. (*Id*.) She then used a saline solution and gauze to clean a 1cm laceration on the top of Mr. Gilliam's head and a 2 cm abrasion on his right shoulder. (*Id*.) Ms. Sherman also noted a red mark on Mr. Gilliam's wrist cuffed below his waste and dabbed it with the gauze. (*Id*.) Guards escorted Mr. Gilliam out of the area and back to his cell. (*Id*.)

After the incident, Defendant Foreman charged Mr. Gilliam with failure to obey orders of staff, insolence to a staff member, using abusive/obscene language, assault, and unauthorized use of state property. (#219-3 at pp. 4-14) Mr. Gilliam was found guilty of all of the charged violations except for the unauthorized use of state property. (*Id*. at p. 13)

In response to grievances filed by Mr. Gilliam, Thomas Rowland of the Internal Affairs Department of the ADC conducted an investigation into the incident to determine whether the force used to remove him from his cell was excessive in violation of the ADC's policy on the use of force. (#219-5 at p. 2) Investigator Rowland concluded that there was no violation of the ADC's use-of-force or cell-extraction policies. (#219-4)

C.   Sovereign Immunity

Mr. Gilliam's claims for money damages from the Defendants in their official capacities are barred by sovereign immunity. A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State*

*Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). Official-capacity claims against all of the remaining Defendants for money damages should be dismissed based on sovereign immunity.

    D.    Excessive Force

Mr. Gilliam complains that Defendants Foreman, Barnes, Butler, Smith, Hoskin, and Cobb used excessive force during the cell extraction. (#2, #71 at p. 2) Officers do not violate the Eighth Amendment when they use force reasonably "in a good-faith effort to maintain or restore discipline," but they may not apply force "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); see also *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006). Factors a court may consider when deciding whether a particular use of force was reasonable include whether there was an objective need for force, the relationship between the need and the degree of force used, the threat reasonably perceived by the correctional officers, efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. *Hudson*, 503 U.S. at 7; see also *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008).

    1.    Defendant Harrison Foreman

At his deposition, Mr. Gilliam testified that Defendant Foreman sprayed him with chemical agent. (#2 at p. 6, #219-1 at pp. 26-27, 51) It is unclear when, during this

incident, Defendant Foreman sprayed Mr. Gilliam with chemical agent.[5]  (#219-7 at p. 5)  But assuming that Mr. Gilliam is correct, the force used by Defendant Foreman was not excessive.

Here, the evidence shows that Mr. Gilliam had verbally threatened Defendant Foreman and refused his direct orders to come to the gate to be restrained so that he could be removed from a cell with the gap in the fence.  (#219-5)  Mr. Gilliam's refusal to follow direct orders warranted the use of force in order to place him into restraints so that he could be transferred to a secure cell.  Any use of chemical agent by Defendant Foreman would have been so minimal that it did not clearly appear on the video of the incident.  Mr. Gilliam was immediately taken to the shower to decontaminate after he was restrained.  (#219-1 at p. 32, #219-5 at p. 4)  Under the circumstances, Defendant Foreman's use of chemical agent was not malicious or excessive.  See *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (pepper spray may be used if "the inmate's noncompliance . . . poses a threat to other persons or to prison security"); see also *Jones v. Shields*, 207 F.3d 491, 496-97 (8th Cir. 2000) (a limited application of chemical agent to

---

[5]At his deposition, Mr. Gilliam alleged that after the second round of 37 millimeter, Defendant Brooks and "somebody else" sprayed him with chemical agent. (#219-1 at p. 27)  The video of the incident does not show Defendant Foreman spraying chemical agent at that time.  The video does show, however, that after the extraction team entered Mr. Gilliam's cell, but before they had forced him to the ground, Defendant Foreman was standing outside the fence, near Mr. Gilliam.  (#219, Exhibit 3)  It is unclear, however, whether Defendant Foreman sprayed anything on Mr. Gilliam at that time.

an inmate after refusal to follow a direct order constitutes a tempered response by prison officials).

  2.  Defendant Barnes

Captain Tony Barnes was not part of the extraction team but was in the yard during the incident and assisted the team with the cell extraction. He instructed the extraction team to enter the cell after Mr. Gilliam did not respond to the use of the chemical agent or the 37 mm shots. (#219-3 at pp. 2, 33) Defendant Barnes entered the cell along with the team and used a baton on Mr. Gilliam until he was restrained. (#219-4 at p. 10)

According to Mr. Gilliam, Defendant Barnes "pushed his way pass the extraction team and begin to hit plaintiff repeatedly across the back, neck, head and shoulder with a nightstick, resulting in injuries to plaintiff's head and shoulder." (#2 at pp. 6-7, see also #219-1 at p. 30) Mr. Gilliam complains that Captain Barnes continued to attack him until Defendant Lane ordered him to stop. (#2 at p. 7, #234 at p. 10) Defendants Barnes and Lane both deny that Defendant Lane instructed Defendant Barnes to stop his actions, and the video of the incident does not contradict their account. (#219, Exhibit 3; #219-5 at pp. 3-5; #219-7 at pp. 4, 15)

Again, here there was a need for force to restrain Mr. Gilliam so that he could be moved to a secure cell. (#219-5, #219-7) Defendant Barnes's response to Mr. Gilliam's resistence when the extraction team entered the cell was reasonable under the circumstances. (#219, Exhibit 3; #219-7 at pp. 5-6)

While Mr. Gilliam complained that Defendant Barnes's use of the baton resulted in injuries, on examination by Nurse Sherman, Mr. Gilliam's only injuries were a 1cm laceration on the top of his head and a 2 cm abrasion on his right shoulder. Any injury Mr. Gilliam suffered as a result of the use of force was minimal.

Based on the undisputed facts and the videotape of Mr. Gilliam's extraction, the Court concludes that no reasonable jury could find in favor of Mr. Gilliam on his excessive force claim against Defendant Barnes. See *Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding summary judgment is appropriate in an excessive force case when, based upon a videotape of the incident, no reasonable jury could rule in favor of the plaintiff); *Wallingford v. Olson*, 592 F.3d 888, 892–93 (8th Cir. 2010) (same).

3.     Extraction Team

Mr. Gilliam complains that all of the ADC officers who were part of the extraction team (Defendants Butler, Cobb, Hoskin, Lane, Lang, Smith, and Warren) attacked him with "blows and kicks to the boby [sic], face, head." (#71 at p. 2) In response to the motion for summary judgment, Mr. Gilliam also asserts that Defendant Butler kicked him in the face, and officer Cobb assaulted him with his helmet. (#234 at p. 10)

The extraction team was formed to restrain Mr. Gilliam after he had refused to comply with direct orders to come to the door of his cell to be placed in restraints. After attempts to subdue Mr. Gilliam with chemical agent and shots from a 37 millimeter had failed, the extraction team entered his cell. Mr. Gilliam still resisted. The amount of

force used by Defendants Butler, Cobb, Hoskin, Lane, Lang, Smith, and Warren was necessary in order to place Mr. Gilliam in restraints. (#219-5 at pp. 1-5, #219-7 at pp. 1-6)

Based on the undisputed facts and the videotape of Mr. Gilliam's extraction, the Court concludes that no reasonable jury could find in favor of Mr. Gilliam on his excessive force claims against Defendants Butler, Cobb, Hoskin, Lane, Lang, Smith, and Warren. Thus, Defendants are entitled to summary judgment on Mr. Gilliam's excessive force claims. See *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Wallingford v. Olson*, 592 F.3d 888, 892–93 (8th Cir .2010).

E.  Failure to Protect

Claims of failure to protect are governed by a "deliberate indifference" standard. "[D]eliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Ambrose v. Young*, 474 F.3d 1070, 1076 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970 (1994)). The duty to protect requires only that prison officials take reasonable measures to abate substantial risks of serious harm, of which they are aware. *Farmer*, 511 U.S. at 847.

Here, Mr. Gilliam alleges that Defendants Michael Allen and Steve Chapman failed to protect him from verbal harassment of other inmates and prison officials. He

also alleges that all of the defendants who participated in the extraction failed to protect him because they saw the excessive force being used to extract him from his cell and did not intervene to prevent it. (#71 at p. 2)

    1.    Lieutenant Michael Allen[6]

Mr. Gilliam claims Defendant Allen failed to intervene to "stop people from harassing me." (#219-1 at p. 54) At his deposition Mr. Gilliam testified that, "Mr. Allen worked the morning shift. . . . And the officer that was working in isolation is the one started it all, on his shift. And he [Defendant Allen] didn't do nothing to stop it and he knew it was happening. That's why I sued him, for not intervening and trying to stop it from happening on his shift." (#219-1 at pp. 52-53)

Mr. Gilliam claims that Defendant Allen did nothing to prevent the harassing comments he heard outside his cell that morning which caused him to go out on yard call. (*Id*. at pp. 52-55) Mr. Gilliam asserts that Mr. Allen was aware that others were harassing him. (*Id*.) Other than this assertion, Mr. Gilliam has not offered any evidence to establish that he was being harassed, that Defendant Allen was aware that others were harassing him, or that there was a risk of harm to Mr. Gilliam if Defendant Allen did not intervene. Defendant Allen is not liable to protect Mr. Gilliam from a harm that he was not aware of.

---

[6] Defendant Allen was not part of the extraction team and does not appear in the video of the incident. (#219-1 at pp 51-53, 55)

To the extent that Mr. Gilliam is alleging that Defendant Allen was liable because he was a supervisor during the shift when the alleged harassment occurred, Defendant Allen is correct that he cannot be held liable merely because he was a supervisor. See *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (supervisors cannot be held liable for constitutional violations of those they supervise based solely on their role as supervisors).

No reasonable juror could find in favor of Mr. Gilliam on his failure-to-protect claim against Defendant Allen. Accordingly, Defendant Allen is entitled to summary judgment.

2. Steve Chapman[7]

Similarly, Mr. Gilliam testified that he sued Defendant Chapman because he harassed him or did nothing to stop harassment by others. (#2 at pp. 8-9, #219-1 at p. 55) Mr. Gilliam has not produced any evidence to support his claim that Defendant Chapman harassed him or that he notified Defendant Chapman that he was being harassed and was in danger of harm. No reasonable jury could find in favor of Mr. Gilliam on his failure-to-protect claim against Defendant Chapman. Accordingly, Defendant Chapman is entitled to summary judgment.

---

[7] Defendant Chapman was not part of the extraction team and did not appear in the video of Mr. Gilliam's cell removal. (#219-1 at pp. 55-56)

3.  Extraction

Mr. Gilliam also alleges that all of the Defendants who participated in the extraction failed to protect him because they saw the excessive force being used to extract him from his cell and did not intervene to prevent it. (#71 at p. 2) The amount of force used by officers participating in the extraction was reasonable under the circumstances, and so Defendants were under no duty to intervene to protect Mr. Gilliam.

F.  Assault and Battery

When screening Mr. Gilliam's complaint, the Court found that Mr. Gilliam had stated state law tort claims for assault and battery against Defendants Barnes, Brooks, and Butler. (#8 at p. 3) Because the Court has determined that Defendants' motions for summary should be granted with respect to his federal constitutional claims, the Court should decline to exercise supplemental jurisdiction over state claims of assault and battery. See *Gibson v. Weber*, 433 F.3d 642 (8th Cir. 2006) (Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed).

IV. **Conclusion:**

The Court recommends that Defendants Michael Allen, Tony Barnes, Levester Butler, Steven Chapman, Fidel Cobb, Harrison Foreman, Ronnie Hoskin, Stephen lane, James Lang, Marion Smith, and Antonio Warren's motion for summary judgment (#219) be GRANTED. Mr. Gilliam's constitutional claims against these Defendants should be

DISMISSED, with prejudice.  His state law tort claims should be DISMISSED, without prejudice.

DATED this 5th day of December, 2013.

_____
UNITED STATES MAGISTRATE JUDGE